Zager *v.* Gubernick (et al., Appellant).

Argued December 17, 1964. Before ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

*Frank Bielitsky,* for appellant.

*Max Meshon,* with him *Eilberg, Meshon & Brener,* for appellees.

OPINION BY FLOOD, J., March 18, 1965:

A settlement of plaintiffs' claim for damages in an automobile accident was negotiated by an independent adjuster on behalf of the appellant casualty company, the insurer of the driver of the other car. The appellant denies the authority of the adjuster, Gubernick, to make this settlement for it.

The accident occurred on February 22, 1960. A few days later the plaintiffs' attorney wrote to the owner and to the operator of the other vehicle, requesting the name of their insurance carrier. Thereafter Gubernick advised the attorney that he was handling the claim. He arranged an examination of plaintiffs by defendant company's physician and received an itemized statement of the losses sustained by the plaintiffs. He continued to negotiate and it was agreed by him and the plaintiffs that the sum of $4200 should be paid to plaintiffs in settlement. Releases of the

insured, executed by plaintiffs in October, 1960, were sent to Gubernick, who in turn mailed them to the office of the defendant company. The releases did not disclose the name of the appellant. They were never returned to plaintiffs' attorney, but payment was not made thereunder, and plaintiffs' attorney's numerous demands upon Gubernick for payment were met with the explanation that there was a clerical delay.

Gubernick first disclosed the name of the appellant to the plaintiffs' attorney on January 17, 1961, and on the same day the appellant's vice president, Mr. Heimbach, notified the attorney by telephone that the insurance company would not accept the settlement since it was too high. He also stated that Gubernick was "one of their best adjusters" that he had "been working for them for quite some time" and had "never given them a release in the past which they had questioned" but in this case he had exceeded his authority.

Under date of January 25, 1961, Heimbach wrote the attorney a letter of explanation in which he stated: "Under date of October 26, Mr. Irving L. Gubernick, independent adjuster who is handling this case in our behalf, presented a set of releases totaling $4200.00 . . . . We promptly advised Mr. Gubernick that the releases were being rejected . . . ." The letter also said that Gubernick was advised "that it was our assumption that he had negotiated settlement with you continent [sic] upon the fact acceptance or rejection on the part of the company, particularly in view of the amount suggested and involved, which definitely does exceed the authority granted by this company to any outside adjuster."

Judge KALLICK, sitting without a jury, concluded that the adjuster had been authorized to make full settlement of the claims, and found for plaintiffs in the amount of the settlement.

There is sufficient evidence in this case to support the court's finding that Gubernick had the power to settle and adjust the claim without prior approval by the appellant company. He had been handling claims for them for some time in the past, and all settlements made by him on their behalf had been accepted as final. Heimbach's letter of January 25, 1961, stated that the adjuster was ". . . handling this case in our behalf . . ." Plaintiffs' attorney knew Gubernick was acting as agent for an insurance company, though the latter's name was then undisclosed. The circumstances clearly warrant the conclusion that the company in authorizing Gubernick to handle this case for it, authorized him to make adjustment of the claims.

So far as the plaintiffs are concerned, the appellant had clothed Gubernick with all the appearances of authority to negotiate a settlement. When the plaintiffs' attorney wrote to the owner and to the operator of the other vehicle, Gubernick alone got in touch with him. He knew Gubernick to be an insurance adjuster. Gubernick took all the steps that would normally be taken by the other driver's insurer. He arranged for the physical examination of the plaintiffs, obtained an itemized statement of the losses, carried on negotiations to the conclusion of the settlement, gave the attorney the forms of release to be executed by the plaintiffs and upon receipt of the executed releases forwarded them to the company's offices. These activities occupied the period from shortly after the accident on February 22, 1960 until October 26, 1960, when the releases were received at the defendant company's office. During all this time neither the plaintiffs nor their attorney ever heard from the appellant except through Gubernick and indeed did not know the appellant's identity. And indeed there is no evidence that the appellant took any steps to repudiate the contract for three months thereafter, except for the self-serving

statement in the appellant's letter to the attorney on January 25, 1961, that they had "promptly" advised Mr. Gubernick after the receipt of the releases that they were being rejected.

Under such circumstances even if Gubernick did not have actual authority to settle the claim, and we think there is evidence that he did, he had at least apparent authority to deal with the plaintiffs and make the settlement. Restatement (2d), Agency, §8. Under such circumstances, the plaintiffs have the same rights with reference to the appellant as if Gubernick had been authorized. Ibid., §8, comment a.

Even if there were a limitation as to the amount for which Gubernick could settle, and he was aware of this, the appellant would still be bound. A limitation on his authority as to amount only, which was communicated to Gubernick, but not to the parties with whom he is authorized to deal, does not affect his principal's liability. Such "secret instructions" have no effect upon dealings with a third person who has no notice of them. Restatement (2d), Agency, §160; *Coughlin v. Slocum*, 33 Luz. Leg. Reg. 393 (1939); *Anderson v. National Surety Co.*, 196 Pa. 288, 46 A. 306 (1900).

The refusal to admit Gubernick's deposition which might have established that he knew that such a limitation on his authority existed was, therefore, harmless error. Moreover, Gubernick was available as a witness at the trial, and he is not a party adverse to the appellant for the purpose of Pa. R. C. P. No. 4020. Moreover, there is no evidence that even Gubernick knew of any such limitation on his authority until the appellant attempted to repudiate it, or that the settlement or its amount was so far beyond what had been previously negotiated by him in other cases on behalf of the appellant as to negate the natural inference that his authority extended to it.

All the circumstances of the case taken together show that Gubernick had at least apparent authority to conclude the settlement and bind the company so far as the plaintiffs were concerned. An adjuster may occupy such a relation to the company by virtue of long continued employment, and long continued custom with relation to the conduct of certain matters, that his acts will bind it. Couch, Cyclopedia of Insurance Law (1929), §§512, 514. When an insurance company delegates the power of adjustment, an adjuster so employed has the power to make arrangements with the insured after loss, and to bind the insurer thereby. *Dubin Paper Co. v. Insurance Company of North America,* 361 Pa. 68, 63 A. 2d 85 (1949).

An affirmance of even an unauthorized transaction can be inferred from a failure to repudiate it. Restatement (2d), Agency, §94. *Savidge v. Metropolitan Life Ins. Co.,* 380 Pa. 205, 110 A. 2d 730 (1955). Here, there was a total failure to communicate to the plaintiffs or their attorney any dissent from, or repudiation of, the settlement for almost three months after Gubernick had made it on the appellant's behalf.

The statute of frauds does not apply because the agreement was in settlement of defendant's own obligation as insurer, not the debt or default of another. *Headley's Express & Storage Co. v. Shapiro,* 95 Pa. Superior Ct. 441 (1929); *Philadelphia v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co.,* 42 Pa. D. & C. 674, 679 (1941).

The defence of executory accord is not available under the facts of this case. When a settlement of an existing controversy has been agreed upon it does not constitute a defence to a suit upon the underlying claim for the party who has defaulted in his obligation under the settlement. However, the party who has not defaulted may enforce the accord, or, if the other party has defaulted, may, at his option, enforce

the underlying agreement. *Schwartzfager v. Pittsburgh, Harmony, Butler and New Castle Railway Company,* 238 Pa. 158, 85 A. 1115 (1913). See *Dubin Paper Co. v. Insurance Company of North America,* supra. In the case of *Konqueror Building & Loan Association v. G. R. Kinney Co., Inc.,* 315 Pa. 318, 172 A. 719 (1934), cited by the appellant, the plaintiff simultaneously affirmed the lease and sued for the amount agreed to be paid by the tenant for its cancellation. We have no such situation here. The plaintiffs have performed their part of the accord by executing and delivering the releases, and therefore have the right to enforce the settlement instead of suing in trespass for their damages in the accident.

Judgment affirmed.